```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ELISABETH HIRKO,

                    Plaintiff,                          **MEMORANDUM OF DECISION**
                                                        **AND ORDER**
                                                        03-CV-4741 (DRH) (MLO)
          - against -

UNITED STATES OF AMERICA, STEVEN
CANTOR AND K.E.M. ENTERPRISES INC.,

                    Defendants.
----------------------------------------------------------X
UNITED STATES OF AMERICA,

                    Cross-Claim Plaintiff,

          - against -

STEVEN CANTOR,

                    Cross-Claim Defendant,
     and

JOYCE MILILLO,

                    Additional Defendant on the
                    Crossclaim.
----------------------------------------------------------X
```

**A P P E A R A N C E S :**

**MICHAEL B. SCHULMAN & ASSOCIATES, P.C.**
Attorneys for Plaintiff
145 Pinelawn Road, Suite 310N
Melville, New York 11747
By: Michael B. Schulman, Esq.

**ROSALYNN R. MAUSKOPF,**
**UNITED STATES ATTORNEY**
Attorneys for Defendant United States of America
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044-0055
By: Karen Wozniak, Trial Attorney, Tax Division

**HURLEY, District Judge:**

Plaintiff Elisabeth Hirko ("Plaintiff") filed the instant action to quiet title to real property located at 275 Timber Point Road, East Islip, New York (the "Premises") upon which the defendant/cross-claim plaintiff the United States of America ("Defendant" or the "United States") has filed a tax lien. Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, Defendant's motion is granted.

## *BACKGROUND*

The material facts, drawn from the Complaint and the parties' Local 56.1 Statements, are undisputed unless otherwise noted. By deed dated March 31, 1993, Plaintiff's then-husband Steven Cantor ("Cantor") transferred his interest in the Premises to Plaintiff. At the time of the transfer, Plaintiff and Cantor held joint title to the Premises. The deed provides that the transfer was "in consideration of Ten Dollars and other valuable consideration paid by [Plaintiff]." (Def.'s Ex. A.)

In March 1993, Cantor was the sole shareholder and officer of Cantor Bros. Glass Corp. ("CBGC"). As of March 1993, CBGC had not paid over to the Internal Revenue Service (the "IRS") $47,992.90 in income and Federal Insurance Contributions Act ("FICA") taxes withheld from the wages of CBCG's employees for the tax period ending September 30, 1992. On February 6, 1995, the IRS made a single assessment in the amount of $122,305.28 against Cantor pursuant to 26 U.S.C. § 6672 as a responsible person of CBGC who wilfully failed "to collect, truthfully account for and pay over" income and FICA taxes withheld from the wages of CBGC's employees. This assessment encompassed Cantor's liability for the tax period ending September 30, 1992, as well as Cantor's liability for the tax periods ending December 31, 1993

and June 30, 1994. On February 24, 1997, the IRS filed a Notice of Federal Tax Lien against the Premises. Plaintiff does not dispute the validity of the tax lien.

The United States contends that the transfer of the Premises by Cantor to Plaintiff was fraudulent as to the United States under sections 273 and 276 of the New York Debtor and Creditor Law and should therefore be set aside to the extent necessary to satisfy the United States' claim against Cantor under section 6672 of the Internal Revenue Code with regard to the tax period ending September 30, 1992. Plaintiff opposes the motion, arguing that the United States has failed to establish that the transfer was made without fair consideration and that pursuant to section 278 of the New York Debtor and Creditor Law, the United States is barred from proceeding against her because she is a "bona fide purchaser."

## DISCUSSION

### I. *Applicable Law and Legal Standards*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could

find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56©)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court, in considering a summary judgment motion, must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof demonstrates that the non-moving party's evidence is insufficient as

a matter of law, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

## II.    The Validity of the Conveyance

### A.    Applicable Law

At the outset, the Court notes that the validity of the conveyance at issue is governed by state law. *See United States v. McCombs*, 30 F.3d 310, 323 (2d Cir. 1994) (noting that "'federal . . . courts must look to state law'" to ascertain whether a taxpayer has a property interest in property subjected to a federal tax lien") (quoting *Aquilino v. United States*, 363 U.S. 509, 512 (1960)). Section 273 of New York Debtor & Creditor Law ("Section 273") provides as follows:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

N.Y. Debt. & Cred. Law § 273. This section covers constructive as opposed to actual fraud. *McCombs*, 30 F.3d at 323; *see also Gasser v. Infanti Int'l, Inc.*, 353 F. Supp. 2d 342, 354 (E.D.N.Y. 2005) ("A claim under DCL § 273 "does not require proof 'of an intent to deceive or any of the traditional elements of fraud.'").[1] To establish a fraudulent conveyance under this

---

[1] Section 276 of the New York Debtor and Creditor Law, on the other hand, does require intent to defraud. This section provides as follows:

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors

N.Y. Debt. & Cred. Law § 276.

-5-

provision, a party must prove that: (1) the transfer was a conveyance within the meaning of the statute; (2) the conveyance was made by a person who is or will thereby be rendered insolvent; and (3) the conveyance was made without fair consideration. *Id.*

It is undisputed that the first element was met here. Moreover, Plaintiff concedes that Cantor was insolvent at the time of the transfer under New York law.[2] Thus, Plaintiff's opposition is confined to the third element, namely, that the conveyance was made for fair consideration.[3] Pursuant to the statute,

> Fair consideration is given for property, or obligation,
>
> a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
> b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

N.Y. Debt. & Cred. Law § 272.

---

[2] Section 271 of the New York Debtor and Creditor Law states that "[a] person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." N.Y. Debt. & Cred. Law § 271.

[3] Pursuant to section 273, a fraudulent conveyance may only be deemed fraudulent as to "creditors." Section 270 of the New York Debtor and Creditor Law defines a creditor as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." N.Y. Debt. & Cred. Law § 270. Here, it is undisputed that the United States was a creditor of Cantor at the time of his transfer of the Premises as he was liable to the United States pursuant to 26 U.S.C. § 6672 as a responsible person of CBGC who wilfully failed "to collect, truthfully account for and pay over" income and FICA taxes withheld from the wages of CBGC's employees. *See Snyder v. United States*, No. 88-CIV-2136,1995 WL 724529, at *10 (E.D.N.Y. July 26, 1995) ("[A]lthough a federal tax lien does not attach until assessment, the person responsible for paying the withholding taxes incurs a contingent liability from the moment the taxes are withheld.") (citing *Kalb v. United States*, 505 F.2d 506, 509 (2d Cir. 1974)).

In general, a creditor asserting a claim of fraudulent conveyance under section 273 bears the burden of establishing lack of fair consideration. *McCombs*, 30 F.3d at 323. Where the conveyance involves family members, however, the burden shifts to the grantee if one of two factors is present: "(1) the absence of any tangible consideration, or (2) a clandestine transfer of property designed to conceal the nature and value of the consideration." *Id.* at 325; *see also id.* at 324 (noting "authority under New York law . . . for the view that 'where the evidentiary facts as to the nature and value of the consideration are within the transferee's control,' the burden of proving the adequacy of consideration shifts to the transferee") (quoting *ACLI Gov't Secs., Inc. v. Rhoades*, 653 F. Supp. 1388, 1391 (S.D.N.Y. 1987), *aff'd*, 842 F.2d 1287 (2d Cir. 1988)); *see also In re Manshul Constr. Corp.*, Nos. 96B44080, 96B44079, 97 CIV. 8851, 99 CIV. 2825, 2000 WL 1228866, at *52 (S.D.N.Y. Aug. 30, 2000) (shifting burden to show fair consideration to family member transferee); *Cadle Co. v. Lieberman*, No. 96 CV 495, 1998 WL 1674549, at *8 (E.D.N.Y. Sept. 11, 1998) (same); *In re Cambridge Capital, LLC*, 331 B.R. 47, 62 (Bankr. E.D.N.Y. 2005) (noting shifted burden). Here, as the deed provides that the transfer was effectuated for no real tangible consideration, it is undisputed that the first factor is present. In addition, all of the information regarding the alleged consideration is within Plaintiff's control. Accordingly, the Court finds that Plaintiff bears the burden of demonstrating that the transfer was made in exchange for fair consideration.

### B.  *Application to the Present Case*

Plaintiff contends that at the time of the transfer, she and Hirko were contemplating divorce and that Hirko informed her that he would transfer the Premises to her if she would reconsider the divorce or grant him joint custody of their children. In support of this

claim, Plaintiff proffers her deposition testimony as well as the testimony of Cantor.  In her testimony, Plaintiff stated that at the time of the transfer, both she and Hirko had been contemplating divorce although she could not recall for how long.  (Deposition of Pl., dated Mar. 19, 2004 ("Pl.'s Dep.") at 35.)  She further indicated that they had gone to marriage counseling prior to the transfer but could not recall when.  (*Id.* at 35-36.)  She did, however, identify the name of the marriage counselor.  (*Id.* at 36.)  She testified that she believed she would have to leave her home if they divorced, (*id.* at 39), and that Hirko specifically told her that he would transfer the Premises into her name if she would agree to stay in the marriage a little longer.  (*Id.* at 38.)  She also stated that prior to Hirko's proposal, she had decided to seek sole custody of their children, believing that she would be successful because she was the "better parent," although she could not recall if she relayed that intent to Hirko.  (*Id.* at 41-42.)  Finally, she indicated that although she had no desire to avoid a divorce, she ultimately agreed to the transfer in exchange for her consent to grant joint custody.  (*Id.* at 42.)  As Plaintiff explained:

> I felt that it was important for the children to have stability in their life and their whole life was turned upside down; their father was gone, things were crazy and you are going to move them into a new house and school district and their life would be in shambles. If I could keep it together as best I could, that was my intent.  If I can stay in the house and keep their life from being disrupted, that was my goal.

(*Id.* at 42.)  Plaintiff and Cantor divorced in 1999.  (*Id.* at 43.)

Cantor testified that he transferred the Premises to Plaintiff because he "was hoping for some kind of reconciliation and [he] thought it was an act of good faith."  (Dep. of Steven A. Cantor, dated Feb. 19, 2003 ("Cantor Dep."), at 16.)

Plaintiff argues that the above evidence demonstrates that the transfer was made

for fair consideration because "[i]t is well settled that a husband's obligation to support his wife and children is an antecedent debt that qualifies as fair consideration," (Pl.'s Mem. at 9 (citing, inter alia, *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1059-60 (2d Cir. 1995)), and that "[i]n making the subject transfer Cantor provided a home and security for Hirko and his minor children." (*Id.* at 11.) Although Plaintiff's recitation of the law is correct, her factual conclusion is wholly unsupported by the record. Plaintiff has failed to proffer any evidence that Cantor's transfer of his interest in the Premises to Plaintiff was made to fulfill his support obligations either to her or to their children. In this regard, there is no evidence to suggest that Plaintiff agreed to forego her claim for maintenance and/or child support in consideration of Cantor signing over his interest in the Premises. *Compare United States v. Laronga*, No. 89-CV-692, 1998 WL 5408, at *3 (E.D.N.Y. January 6, 1998) (denying Government's motion for summary judgment to set aside transfer of property from husband to wife where judgment of divorce did not provide for spousal maintenance thereby lending some support to parties' claim that the conveyance was made in exchange for husband's obligation to support wife). Moreover, even assuming arguendo that there was such an agreement between Plaintiff and Cantor, because there is no information in the record as to the value of the property transferred or as to the amount of maintenance and/or support Plaintiff would be entitled to receive, there is no way for the Court to determine whether such an exchange constituted fair consideration. Thus, to the extent Plaintiff contends that she conveyed the Premises to Cantor in exchange for the discharge of an antecedent debt, her failure to present *any* evidence on this point dictates a finding that her claim cannot withstand summary judgment.

Next, as for Cantor's testimony, he indicated that he transferred the Premises to

Plaintiff because he "was hoping for some kind of reconciliation." (Cantor Dep. at 16.) Under New York law, such evidence is clearly insufficient to raise a genuine issue of fact regarding the existence of fair consideration as that term has been defined under the Debtor and Creditor Law. *See Laronga*, 1998 WL 5408, at \*3 ("New York courts have held that a conveyance by a husband to a wife upon her promise that she would seek to reconcile their differences is not fair consideration for purposes of § 273.") (citation omitted); *Snyder*, 1995 WL 724529, at \*10 (noting that "an agreement between spouses to remain married and continue to live together cannot, as a matter of law, constitute fair consideration") (citations omitted). Although such consideration may have been valid as between Hirko and Cantor, Hirko's desire to reconcile was insufficient to validate the transfer as to Hirko's creditors at a time when Hirko was insolvent. *See, e.g.*, *Robinson v. Stewart*, 10 N.Y. 189 (1854) (finding that deed from parent to child, although valid between the parties, was fraudulent as to creditors); *Marine Midland Bank v. Stein*, 433 N.Y.S.2d 325, 327 (Sup. Ct. New York County 1980) ("Defendant, Sydney Stein, states that the consideration for these transfers was his love and affection for his children, an allegedly valid consideration if, as defendant contends, the Debtor and Creditor Law does not govern this action. It is clear, however, that the statute is controlling and that the claimed consideration is insufficient as a matter of law.").

The only evidence remaining is Plaintiff's testimony that Cantor conveyed his interest to Plaintiff in exchange for Plaintiff's promise to grant Cantor joint custody. Plaintiff cites no authority to support this position and the Court is aware of none. Given the manner in which New York courts have interpreted similar agreements, the Court finds that Plaintiff's testimony fails to raise a triable question of fact. *See Rush v. Rush*, 244 N.Y.S.2d 673, 675 (2d

Dep't 1963) (granting creditor summary judgment on fraudulent conveyance claims; "[l]ove and affection" and wife's promise to provide for husband's young daughter by a previous marriage not fair consideration); *Schoenberg v. Schoenberg*, 449 N.Y.S.2d 137, 139 (Sup. Ct. Nassau County 1982) (finding no fair consideration where husband transferred real property to his wife in order "to 'placate' [wife] because the parties were living in New York rather than in [wife's] preferred state of New Mexico"); *Corbin v. Litke*, 431 N.Y.S.2d 800, 801 (Sup. Ct. Suffolk County 1980) ("A conveyance by a husband to a wife upon her promise that she would seek to reconcile their differences and continue to live with him is not consideration within the meaning of [section 272]").

In sum, the Court finds that the testimony of Plaintiff and Cantor is insufficient to raise a genuine issue of fact that the Premises were conveyed for fair consideration. *See United States v. Alfano*, 34 F. Supp. 2d 827, 11-12 (E.D.N.Y. 1999) (noting appropriateness of summary judgment on fraudulent conveyance claims where transferee fails to raise genuine issue of triable fact that exchange made for fair consideration) (collecting cases). Accordingly, because the other elements of a fraudulent conveyance claim under Section 273 are undisputed, the Court finds that the March 31, 1993 transfer of the Premises from Cantor to Plaintiff was fraudulent as to Defendant and should be set aside to the extent necessary to satisfy the United States' claims.[4]

## *CONCLUSION*

For all of the above reasons, Defendant's motion for summary judgment is

---

[4] Because Defendant has established a fraudulent conveyance claim pursuant to Section 273, the Court need not address whether Defendant can establish a fraudulent conveyance claim pursuant to Section 276.

GRANTED.

    **SO ORDERED.**

Dated:  Central Islip, New York
       March 16, 2006                     /s_____
                                                      Denis R. Hurley,
                                                      United States District Judge